Good morning. May it please the court, Elizabeth Richardson Royer on behalf of Marco Bautista, the appellant in this case. I plan to reserve two minutes for rebuttal. Alright. Now, when the police officers pried open the gearshift cover in Mr. Bautista's car and searched within the machinery below, they exceeded the scope of an otherwise lawful parolee or consent-based search and violated the Fourth Amendment. The district court therefore erred when it denied Mr. Bautista... What are the parameters of a parole search that you think were exceeded? I mean, under the case law, you can search a home without notice. You presumably can search a home in the middle of the night without notice. I mean, it doesn't get more intrusive than that. I mean, why is this search more egregious than what is otherwise permitted under this exception? I think there's no contest that parolees in California have a significantly diminished expectation of privacy. But that does not mean that they have no expectation of privacy. And in the recent Supreme Court cases... These people can come into your bedroom. They can come into your gearshift. I think what the Supreme Court has emphasized is that the diminishment is due in part to the actual terms of the search condition. And the search condition at issue in California makes clear, and it's unambiguous to a parolee, that their home can be searched, that their property can be searched, that their person can be searched. I think it's much less clear, and certainly not unambiguous, that the search condition itself allows for searches of the functional portions of the car. And I think that is the distinction here, is that it's not clear and unambiguous that the search, once they went underneath the gearshift, was part of the search condition that parolees are subject to in California. Is there any allegation that the officers broke any part of the vehicle in opening the gearshift part? Now, the car terminology can escape me, but any allegation of that sort? That they forcibly pried open any sort of cover? So if that's the case, what's different than opening a container? Well, Your Honor, I think there's no allegation that they destroyed any part of the vehicle prior to seeing the gun, after which point they could do whatever they needed to do to get it out. But there is an allegation, and there was conflicting evidence at the district court level, about whether officers forcibly had to pry open the gearshift cover or not. And the district court never made a finding on that point, never made a credibility determination, and never actually decided whether the cover was loose or whether it was locked in place, whether force was required or whether force was not required. And that's partly because the district court oversimplified things when this motion was decided and simply found this is a parolee, the search is valid, without really addressing the arguments about the scope of the search. And so the factual dispute about the amount of force required to remove the cover was never decided. And in fact, there was a factual dispute at the district court level about whether officers actually saw the weapon before they took the crowbar and pried open the console. And that issue was never decided either. And so if the amount of force is determinative here, and if the court is prepared to rule in Mr. Batista's favor, if there was force required, that's an issue that has to be decided by the district court and a remand is appropriate. So explain to me what the source of any exceptions to this 3067B3 might be. The California statute. The California statute says it can be searched for a police officer, probation officer, parole officer, any time day and night, with or without cause. And the regs apparently say that any property under your control may be searched without a warrant at any time by any agent and so forth and so on. Right. And just as an initial matter, there's no evidence in the record that Mr. Batista was actually informed of those things. That's irrelevant, right? Assuming that he was, it's still a matter of the scope. And there are cases. There's a California case and a case out of this circuit finding that a defendant who raised a challenge about the scope of the search in both cases of someone else's residence where the defendant spent time fell outside of the parolee search condition, and therefore it was an unlawful search. So it's not the case that a parolee never has standing and can never challenge a search, period. This is not a case where a defendant is challenging the search of, you know, another residence or another dwelling where he might have been. Why isn't this property under his control? Why isn't this squarely within the contours of this regulation I just adverted to? I think the property within the car in all of the passenger areas, in all of the areas where property can be stored, there would have been no question that would have been part of the scope of a parolee search. I think it's unclear under California law, which really is where we have to look to figure out whether the search falls within the scope of the search condition. It's unclear that the mechanical workings of the car are part of that, just like I think it would be unclear. Well, if the cops were looking for drugs, what's to stop them from just totally dismantling the car? In a parolee search circumstance? Correct. Yes. Well, I think that is, if they were to dismantle the car, I think that would be well outside what the clear and unambiguous terms of the search condition permit, the way that I read it. We think he or she has secreted drugs somewhere in the car. Let's find them. We've got a tip. Stop the car. Take it apart. Why not? Well, if Your Honor takes the position that dismantling the vehicle is permissible for parolees in California. That's the hypothetical. Right. Well, I think if that were what the law permitted, then that would be a valid search, but I think it's not at all clear that that's what the law permits. Why not? Partly because in Sampson and in Knights, the Supreme Court, when talking about the diminishment of the expectation of privacy, focused on what the search condition is and what the parolee would expect. And I think that property under your control, if there were a search of the engine, I'm not sure that that would fall into the search. And this is just something that the California court really hasn't determined, is whether the functional part of the car is part of the property under a parolee's control. And so I think the parolee exception, the scope of the search here, exceeded it. And I also think that the scope of any consent search was exceeded in this case. Did he put any limitations on his consent to search a vehicle? No, Your Honor. He did not. He just said, yes, you may search the vehicle. And in determining what the scope of a consent search is, we look at what somebody would have understood, an objective person would have understood from hearing this conversation. And once again, I think that, and Mr. Bautista has said, he never expected the search around the transmission to be done. And that's his subjective understanding. We put that aside. But I don't think anyone would understand just a general consent to allow officers to search the functional machinery of the vehicle. And in cases where this court has upheld searches of such, searches of tires or engines or other functional parts of the car, the court has relied quite heavily upon the fact that the defendant in those cases was watching the search and failed to object. And that makes this case distinguishable, because Mr. Bautista was removed from the scene, seated on the curb for the first search, and actually in the police vehicle for the second search. He had no opportunity to object to the scope of the search in this case. And I'll reserve the rest of my time. All right. Thank you. May it please the court, good morning. Assistant United States Attorney Greg Lesser on behalf of the United States. In order for a defendant to prevail on this appeal, he must demonstrate three things. One, that the search of the vehicle was not a valid parole search. Two, that the search was not a consent search. And that it was not a valid vehicle search. I think we've got the rules down. Can you tell me what are the limitations of a parole search under California law? Well, see, that's why it's actually a very, you know, the Sampson opinion, I think, is very well taken, because if it is arbitrary, capricious, or harassing, that's the only limitation. Now, I think that if the facts proffered or claimed by the defense were true, that the officers just grabbed a crowbar and randomly started searching Mr. Bautista's car. For example, if they pulled him over, found out without probable cause, without reasonable suspicion, just pulled him over, found out he was on parole, and said, you know what, let's dismantle his car. I think you'd make a case that, you know, it could be arbitrary, capricious, or harassing. That's not the case here, and that's not this case. And let me clarify a few factual things. This is continuing conflation by the defense of what happened in this case, which is really odd, given that we've provided to the court, in the excerpts of record, an actual video of what happened. But what happened was, the officers pulled him over, and then they saw several officers testified that, or two officers testified, and also submitted declarations, that their attention was drawn to this cover over the gear shift lever that was loose. And so they lifted it up, the first officer didn't see the gun, and the second officer peering in there did see the gun. So the significance of that is the defense repeatedly describes them prying this open. It was not pried open. But even if it had been, quote, pried open, it didn't involve any crowbar or pry bar. It's undisputed that the pry bar did not show up until it was brought by the tow truck operator later. So I don't know how the defense can say there's some factual dispute about that. In the record, there is not. So once they saw the firearm, the officers saw that the barrel was pointing up at them, so they didn't want to fiddle with it and have it discharge into them. They didn't want to try to pull it forward, which would, of course, pull the trigger back, and potentially, if it was not secured, fire at them. So what they did was they called the tow truck, and then they took the panel off so they could reach the firearm and take it out. So that's the factual situation. If there was any factual dispute, it was about how tightly this plastic skirt cover that goes over the gear shifter lever was secured. But it's undisputed that no crowbar was used to open it, and it was just the hand of the officer that was used. So it was only hand-tight at best. And let me suggest also, if defendants' factual situation or what they proffer as the facts were true, then this officer... I mean, I drove here today in my car. I saw a bunch of plastic panels around, any one of which probably could have hidden a firearm. This officer just happened to zero in on the one panel that it was hidden under and just happened by coincidence to pull that one panel up, and there was the firearm. That does not make sense. All right, so... And with regard to the parole search, that's... Let me get back into that for a second. That is the limitation, arbitrary, capricious, and harassing. Yes, if the police went around, you know, repeatedly went to a parolee's house and dismantled his vehicle, I think that would be arbitrary, capricious, or harassing. But under the circumstances of this case, the totality of the circumstances, which is what the Fourth Amendment analysis requires, it was appropriate, the actions they took here, and within the contours of SAMHSA. So... Let me turn to the consent, if the court has questions on that. Oh, let me point out another thing. I don't know that my brief pointed out very clearly. The district court did make a factual finding with regard to the search under the parole rubric that it was not arbitrary, capricious, or harassing. And that's at page 9 of the excerpts of record, footnote 1. So with regard to consent... The defendant is correct that the consent is evaluated based on if you're a reasonable person listening to the conversation at the time. The defendant did not place any limitations on his consent. And although he may not have liked the fact that the officers then opened up the panel and found his firearm, there was no limitation on it. Any reasonable person would believe that he could search anywhere that's accessible by the defendant. And the other thing is, how do we know that it was accessible? It was accessible because the defendant admitted it himself. On the audio recording, when he was being transported back to the police department, the officer asked him, do you keep your gun there always, or do you usually keep it there, or something like that, and then the defendant confirmed, yeah. So he could obviously access it. So unless the court has any other questions, I... I don't. Thank you. Thank you very much. Thank you. I have just a few points to make in rebuttal. The first has to do with the district court's finding that the search was not arbitrary, capricious, or harassing. And indeed, the district court did make that finding, and that assumed that the scope of the search encompassed the search that occurred. And I think the problem is that the district court didn't consider the scope of the search. I also think that Samson, when Samson referred to that language, there was no issue that the scope of the search in Samson exceeded the search condition. The search condition had to do with the search of the person, and the search in that case was of the person. So the scope was never at issue in that case or in the district court's finding in this case. I think the second point I'd like to make is that the factual dispute that really is at issue in this case is, as my opponent identifies, the force that is necessary to lift the cover. And although there is a video of the arrest and the search in this case, it doesn't show that force, and the district court made no finding on the force required. And I think the third and final point I'd like to make is just to discuss briefly what Mr. Batista actually said when he was being transported to the station. And he did admit that he regularly kept his weapon there. However, he did not say that he could access it from the driver's seat. And in fact, he denied having hidden it there when he was pulled over. And he was admitting everything else. And so there's no reason to believe that he lied about that. I think the accessibility is a question that is not shown by his statement. All right. Thank you very much, both sides. The matter is submitted for decision.
judges: Pregerson, Parker, Nguyen